# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MIRANDA J. TRAUFLER, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| *versus* | § CIVIL ACTION NO. 7:11-1089 |
| | § |
| MICHAEL J. ASTRUE, | § |
| Commissioner of the Social | § |
| Security Administration, | § |
| | § |
| *Defendant*. | § |

## REPORT AND RECOMMENDATION

Plaintiff Miranda J. Traufler ("Traufler") brings this action under 42 U.S.C. § 405(g) for review of a decision denying her application for disability-based benefits under the Social Security Act. Complying with General Order # 18, the parties join issue through competing briefs.[1] Traufler requests judgment reversing and remanding the case for an award of benefits, or, alternatively, further proceedings (Dkt. No. 9); the Commissioner of the Social Security Administration ("Commissioner") requests affirmance. (Dkt. No. 10).

### I. Background

Traufler applied for disability insurance ("DIB") and supplemental security income ("SSI") benefits claiming disability due to: *mental retardation; progressive fibromyalgia; degenerating cervical, thoracic and lumbar spine*

---

[1] General Order #18 is dated September 23, 2003 (superseding January 24, 2002 and September 19, 2001 general orders). (Dkt. No. 3).

*conditions; asthma;* and *depression with anxiety*. (T. 120, 124).[2] Traufler's applications were filed on June 23, 2009, and alleged that her disability commenced on January 5, 2009. (T. 120, 124). After being denied benefits initially (T. 78), Traufler requested a hearing before an administrative law judge ("ALJ"). (T. 88-95).

ALJ Thomas P. Tielens ("ALJ Tielens") conducted a video evidentiary hearing on September 9, 2010. (T. 19, 41-75). Traufler was represented by counsel, Peter Walton, Esq. at the hearing. (T. 19, 41).[3]

ALJ Tielens denied Traufler's applications. (T. 19-31). Traufler appealed to the Appeals Council of the Social Security Administration's Office of Hearings and Appeals. (T. 11-15). Traufler submitted to the Appeals Council a brief from her representative (T. 244-63) as well as additional medical records from North Country Orthapaedic Group, P.C., dated September 17, 2010, to May 4, 2011. (T. 619-52). After considering the brief and the additional evidence submitted, the Appeals Council denied Traufler's request to review. (T. 1-5). This rendered ALJ Tielens's opinion the final decision. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Traufler timely instituted this case on September 14, 2011. (Dkt. No. 1).

## II. Preliminary Discussion

An initial discussion of the Social Security benefit programs at issue and the administrative decision-making process (including certain terms of art) will

---

[2] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 7).

[3] ALJ Tielens presided over the hearing from Syracuse, New York. Traufler appeared and testified through interactive video in Watertown, New York. (T. 19).

aid comprehension of Traufler's underlying claim, ALJ Tielens's decision and Traufler's challenges thereto.

A.   *DIB And SSI Programs; Eligibility for Benefits*

*Disability Insurance benefits*, authorized by Title II of the Social Security Act and funded by social security taxes, provide income to insured individuals forced into involuntary, premature retirement by reason of disability. *Supplemental Security Income* benefits, authorized by Title XVI of the Social Security Act and funded by general tax revenues, provide an additional resource to assure that disabled individuals' income does not fall below the poverty line. Applicants seeking benefits under either of these statutory provisions must prove "disability" within the meaning of the Social Security Act, which defines disability in virtually identical language for both programs, *viz., "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3).

B.   *Sequential Evaluation Procedure*

The law requires *individualized* determinations. *See Heckler v. Campbell*, 461 U.S. 458, 467 (1983). Hence, Commissioner Astrue generally must make both medical and vocational assessments in every case, a huge task given the volume of claims presented on a nationwide basis.

To accomplish this, the Commissioner utilizes a five-step, sequential evaluation procedure for adjudicating disability-based claims. *See* 20 C.F.R.

§§ 404.1520(a), 416.920.[4] This model is "sequential" in the sense that when a decision can be made at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920. This evaluation process has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler*, 461 U.S. at 461) (use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations")).

Claimants bear the burden to prove their disability under the first four steps. *DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998). When they do, a *prima facie* case of disability has been proven. *See Mimms v. Heckler*, 750 F.2d 180, 185 (2d Cir. 1984). The burden then shifts to the Commissioner in Step 5 to show "that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also DeChirico*, 134

---

[4] In this circuit, the Commissioner's five-step sequential procedure is described as follows:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.
2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.
3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment [that meets or equals a] listed [impairment] in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.
4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.
5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520, 416.920)).

F.3d at 1180; *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); 20 C.F.R. § 416.966.

Many specialized rules – some imposed externally by courts – govern the Commissioner's applications of these five steps. Those particularly pertinent to Traufler's instant case are described in the remainder of this section:

1. Step 2 Severity Determinations

Under the Commissioner's regulation, "[a] 'severe' impairment is one that significantly limits an individual's physical or mental ability to do 'basic work activities.'" *Meadors v. Astrue*, 370 Fed. App'x 179, 182 (2d Cir. 2010) (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)); *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also* 20 C.F.R. § 416.921(b) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities").

The phrase "significantly limits" is not tantamount to an ultimate determination of disability. In this circuit, a Step 2 severity inquiry serves only to "screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). Consequently, "[a] finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' . . . [with] . . .'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting *Bowen*, 482 U.S. at 154 n. 12).

2. Step 4 Residual Functional Capacity Determination

When making a Step 4 finding, an ALJ must first assess and articulate a claimant's "residual functional capacity" ("RFC"), *i.e.*, what a claimant can still do in a work setting despite physical and/or mental limitations caused by

impairments and any related symptoms, such as pain. *See* 20 C.F.R. §§ 404.1545, 416.945(a); *see also Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (defining RFC). Administrative law judges thus decide whether applicants, notwithstanding their impairments, have physical and mental abilities to perform activities generally required by competitive, remunerative work on a regular and continuing basis.

3. Step 5 – Satisfying Evidentiary Burden Via Administrative Notice

At Step 5, the Commissioner usually undertakes to satisfy his burden to show that a claimant can still do work existing in the national economy by eliciting or consulting several sources of relevant evidence.[5] In limited circumstances, *viz.*, when a claimant's impairments are purely *exertional* in nature, the Commissioner may take administrative notice of disability *vel non* by adopting findings published in "*Medical -Vocational Guidelines*," commonly called *"the grids." See Roma v. Astrue*, 468 Fed. App'x 16, 20-21 (2d Cir. 2012); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)*; see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2. When only exertional impairments[6] are in play, and an ALJ's

---

[5] Generally, the Commissioner elicits or consults two principal sources of evidence relevant to whether claimants can perform alternative, available work. First, witnesses qualified as "Vocational Experts" may testify as to whether jobs exist for a person with the claimant's precise abilities. *See* 20 C.F.R. §§ 404.1566(e), 416.966(e); *see also* SSR 00-4p, POLICY INTERPRETATION RULING: TITLES II AND XVI: USE OF VOCATIONAL EXPERT AND VOCATIONAL SPECIALIST EVIDENCE, AND OTHER RELIABLE OCCUPATIONAL INFORMATION IN DISABILITY DECISIONS, 2000 WL 1898704, at *1-2 (SSA Dec. 4, 2000). Second, a United States Department of Labor publication titled *Dictionary of Occupational Titles* ("DOT") can assist in determining when a claimant's residual work skills can be used in other work and the specific occupations in which they can be used. *See* 20 C.F.R. §§ 404.1560(d)(1), 416.966(d)(1); *see also* SSR 00-4p, 2000 WL 1898704, at *1-2.

[6] "An exertional impairment is a limitation or restriction imposed by impairments and related symptoms, such as pain, that affect only a claimant's ability to meet . . . strength demands of jobs (*i.e.*, sitting, standing, walking, lifting, carrying, pushing, and pulling)." *Bogardus-Fry v. Astrue*, No. 7:11-CV-883 (MAD), 2012 WL 3779132, at *15 n. 14 (N.D.N.Y. Aug. 31, 2012) (citing 20 C.F.R. §§ 404.1569a(b), 416.969a(b); *Rodriguez v. Apfel*, No. 96 Civ. 8330(JGK), 1998 WL 150981, at *10, n. 12 (S.D.N.Y. Mar. 31, 1998)).

findings of residual functional capacity, age, education, and previous work experience coincide with grids parameters, the Commissioner may directly apply the grids to determine whether work exists in the national economy which claimants can perform. *See Martin v. Astrue,* 337 Fed. App'x 87, 91 (2d Cir. 2009); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 2; *see also Thompson v. Barnhart*, 75 Fed. App'x 842, 844 (2d Cir. 2003) (Commissioner can meet Step 5 burden "by resorting to the applicable medical-vocational guidelines (the grids)").[7]

When claimants also suffer from nonexertional impairments,[8] direct application of the grids to determine disability is not permitted. The Commissioner nonetheless permits administrative law judges to consult them as a "framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by . . . nonexertional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2).[9]

---

[7] The grids are a matrix of general findings – established by rule – as to whether work exists in the national economy that a person can perform. "The grids take into account a claimant's RFC, as well as her age, education, and work experience." *Calabrese v. Astrue*, 358 Fed. App'x 274, 276 & n. 1 (2d Cir. 2009) (citing *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999)). Ultimately, the grids yield a decision of "disabled" or "not disabled." *Zorilla v. Chater*, 915 F. Supp. 662, 667 & n. 2 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1567(a)).

[8] "Nonexertional limitations" are "limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect[ing] only your ability to meet . . . demands of jobs other than . . . strength demands . . . ." *See* 20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

[9] Social Security Ruling 85-15 ("SSR 85-15") addresses this "framework" analysis, and directs that when evaluating nonexertional impairments, an administrative law judge should first consult the grids, along with consideration of the claimant's RFC and vocational factors, to determine the extent of impairment caused by *exertional* limitations. *See* SSR 85-15, THE MEDICAL-VOCATIONAL RULES AS A FRAMEWORK FOR EVALUATING SOLELY NONEXERTIONAL IMPAIRMENTS, 1985 WL 56857, at *3 (SSA 1985). The administrative judge should next determine how much that claimant's "occupational base," (the entire exertional span from sedentary work through heavy work), is *further reduced* by effects of *nonexertional* impairments.

Thus, when both exertional and nonexertional impairments are present, an administrative law judge theoretically can find a claimant *disabled* when the grids direct such a finding solely on the basis of severity of exertional impairments. When exertional impairments alone generate a grid finding of *not disabled*, however, an administrative judge then must determine (usually from other evidence) how much nonexertional impairments further diminish that claimant's occupational base. Only when a large occupational base remains can an administrative judge then deny a claim using the grids as a framework.

### III. The Commissioner's Decision

ALJ Tielens utilized the sequential evaluation procedure described earlier. (T. 19-31). Findings generally favorable to Traufler at the first four steps established a *prima facie* case of disability. At Step 5, however, ALJ Tielens determined, after "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." (T. 30). He concluded, therefore, that Traufler "has not been under a disability" and her claim was denied. *Id*. ALJ Tielens's complete findings and conclusions appear on pages 21 – 30 of the administrative transcript contained in the record before the court. (Dkt. No. 7).

For present purposes, it is necessary to spotlight certain findings at Steps 2, 4 and 5:

Step 2     ALJ Tielens determined that Traufler's asthma, obesity, cognitive deficits, and depression are *not severe impairments.* (T. 21-24).

Step 4     ALJ Tielens determined that Traufler, although unable to perform her past relevant work, has residual functional capacity for unskilled sedentary work. (T. 24-29).

Step 5     ALJ Tielens, using the grids as a framework, concluded that Traufler is not disabled by reason of her exertional impairments and her "additional [nonexertional] limitations have little or no effect on the occupational base of unskilled sedentary work." (T. 30).

Thus, he found that Traufler remains capable of performing basic mental demands of competitive remunerative unskilled work, and a conclusion of "not disabled" was deemed appropriate under the framework of Medical-Vocational Rule 201.25 and SSR 85-15. (T. 30).

## IV. Alleged Errors

Traufler claims that ALJ Tielens erred at every sequential analytical step beyond Step 1. Specifically, Traufler contends:

- Point I: The ALJ erroneously failed [at Step 2] to properly assess the severity of plaintiff's conditions.

- Point II: The ALJ erroneously failed [at Step 3] to find that plaintiff suffers from listing-level intellectual deficit.

- Point III: The ALJ improperly failed [at Step 4] to afford controlling weight to the opinion of plaintiff's treating physician.

- Point IV: The ALJ's RFC determination [at Step 4] erroneously fails to account for all of plaintiff's physical limitations.

- Point V: There is no substantial evidence to support the Commissioner's [Step 5] conclusion that there is significant work in the national economy that plaintiff could perform.

(Dkt. No. 9, pp. 12-25).

In response, the Commissioner maintains that ALJ Tielens properly assessed severity of Traufler's impairments at Step 2, correctly determined at Step 3 that Traufler has no presumptively disabling intellectual deficit, adequately supported his Step 4 RFC assessment with substantial evidence, and

rightly applied Medical-Vocational Guidelines at Step 5. (Dkt. No. 10, pp. 5-8, 13-20, 20-21).

## V. Judicial Review

The court's role is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, ___U.S.___, 130 S. Ct. 1503 (2010); *Berry*, 675 F.2d at 467; *see also* 42 U.S.C. § 405(g). When proper principles of law were applied, and when the Commissioner's decision is supported by substantial evidence,[10] the Commissioner's findings are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also* 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004).

## VI. Discussion and Analysis

Analysis of all errors proffered by Traufler is unnecessary for a proper disposition of this case because clear errors at Step 2 and Step 5 require reversal and remand in any event.[11]

---

[10] "Substantial evidence" is a term of art. It means less than a "preponderance" (usual standard in civil cases), but "more than a mere scintilla," or "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson*, 402 U.S. at 401; *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009); *Halloran*, 362 F.3d at 31. Stated another way, to be "substantial," evidence need only be "enough to justify, if the trial were submitted to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *National Labor Relations Bd. v. Columbian Enameling & Stamping Co.*, 306 U.S. 262, 299–300 (1939), *cited in* Harvey L. McCormick, Social Security Claims and Procedures § 672 (4th ed. 1991).

[11] Interests of justice and principles of judicial economy permit the court to omit discussions of Traufler's suggested errors regarding (1) ALJ Tielens's Step 3 finding regarding intellectual deficit, (2) his failure to give treating physician opinion controlling weight at Step 4, and (3) his failure to account for all physical limitations at Step 4.

## A. Step 2 Error

ALJ Tielens found that Traufler's asthma, obesity, and cognitive deficits are not severe impairments. The principal reasons given for this finding are that Traufler had these conditions long before she stopped working, and her earnings record and work history suggest that they did not prevent her from working. (T. 22).

ALJ Tielens failed to employ correct principles of law in reaching these non-severity conclusions. Although he *cited* the correct standard (T. 20), he did not *apply* it. A legally-correct severity inquiry is not whether an impairment *altogether precludes* ability to work, but rather whether it *no more than minimally affects* ability to work. Prior employment and a steady earnings history notwithstanding an existing impairment may indicate that such impairment does not preclude all employment, but a reasonable mind cannot accept such evidence as adequate to support a conclusion that it has less than minimal effect on ability to work. Instead of screening out *de minimis* claims, *i.e.*, determining whether the medical evidence of Traufler's asthma, obesity and cognitive deficits establishes only a slight abnormality with no more than a minimal effect on Traufler's ability to work, ALJ Tielens raised the bar too high, *i.e.,* to a level approaching complete disability in contravention of governing circuit law.

ALJ Tielens missed the mark with this finding. The court cannot excuse this legal error as harmless because it demonstrably infected subsequent findings at Steps 4 and 5.[12]

---

[12] The effect of an erroneous Step 2 finding may be blunted by taking an impairment (erroneously determined "non-severe" at Step 2) into proper account during the residual functional capacity determination at Step 4. *See Stanton v. Astrue*, 370 Fed. App'x 231, 233 (2d Cir. 2010). That form of redemption does not exist here, however, because ALJ Tielens did not take Traufler's asthma, obesity, or depression with anxiety into account when he made his ultimate RFC determination. (T. 24-29).

B.  *Step Five Error*

At Step 5, the burden to show that a claimant can still perform alternative work that exists in the national economy rests with the Commissioner. (*See* Section II.*B*.1., *supra*). When a nonexertional impairment significantly diminishes a claimant's ability to work, *i.e*, such that a claimant is unable to perform the full range of a work category, the grids (Medical-Vocational Guidelines), alone, do not accurately determine this question because they fail to take into account nonexertional impairments.[13]

Asthma (which frequently results in environmental limitations) and depression are nonexertional impairments. ALJ Tielens did not include *any* nonexertional impairments in his Step 4 residual functional capacity assessment. He clearly was ill at ease with that because at Step 5 he resorted to the "framework" analysis (discussed *supra* in Section II.*B*.3.) rather than applying the grids directly. If he truly thought Traufler's impairments were solely exertional, he would and should have applied the grids directly. Instead, he specifically stated that he was *not* using the grids to "direct" a conclusion, but rather, was merely using them as a "framework" to guide his decision. (T. 30).

The grids clearly would direct a conclusion of "not disabled" based only on exertional impairments that ALJ Tielens factored into his residual functional capacity finding. In lip service to SSR 85-15,[14] ALJ Tielens concluded next that Traufler's "additional limitations" (whatever he thought them to be) "have little

---

[13] The phrase "significantly diminish" is defined as "additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity." *Bapp*, 802 F.2d 605-06; *accord Zabala v. Astrue*, 595 F.3d 402, 410-11 (2d Cir. 2010); *Roma*, 468 Fed. App'x at 21.

[14] *See* SSR 85-15, The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments, 1985 WL 56857 (SSA 1985).

or no effect" on her occupational base. (T. 30). This second finding is nothing more than unreliable *ipse dixit*. It is unsupported by any extrinsic evidence. The erosion-of-occupational-base analysis prescribed by SSR 85-15 contemplates at least some evidence in addition to the grids. *See Bapp,* 802 F.2d at 606 (2d Cir. 1986) (if nonexertional limitations significantly diminish a claimant's ability to perform the full range of work, testimony of either a vocational expert or other similar evidence regarding the existence of jobs in the national economy for an individual with claimant's limitations is required).

Further, ALJ Tielens's erosion analysis is wholly conclusory. It does not attempt to address specifically any limitations stemming from Traufler's unstated but apparently presumed nonexertional impairments. To survive judicial scrutiny, it is necessary to explain why "additional limitations" (presumably uncontrolled asthma and depression) have little or no effect on Traufler's occupational base. Absent that, the court is compelled to conclude that ALJ Tielens improperly intoned "framework" when he actually used a grid rule reflexively to support a conclusion. *See Ceballos v. Bowen*, 649 F. Supp. 693, 705 (E.D.N.Y. 1986). Under that circumstance, the grids do not provide substantial evidence to support the "not disabled" finding.

## VII. Conclusion and Recommendation

ALJ Tielens found Traufler's statements concerning intensity, persistence and limiting effects of her symptoms "simply not credible." (T. 25). Articulating reasons, ALJ Tielens devoted nearly a full page to summarizing a report of a physical therapist who administered Traufler's residual functional capacity tests. (T. 26-27 *citing* 318-332). That therapist repeatedly remarked that Traufler did not put forth her best effort, and that her heart, biomechanical and physiological changes during testing did not reflect effort of someone in "10/10

pain and distress" or putting forth maximum effort. (T. 26-27). ALJ Tielens further highlighted observations of three other physicians (Huizenga, Razzaq, Huang) who doubted or questioned Traufler's subjective complaints based on their objective medical findings. (T. 27). Finally, he emphasized that Traufler declined to follow health provider advice regarding treatment, and discontinued her doctor-patient relationship with Dr. Montalvo-Otano after he told her that he would not "get involved with the disability process." (T. 29).

Feigning illness, faking injury, skewing diagnostic tests, resisting therapeutic measures and affirmatively requesting disability ratings from health providers are, of course, classic indicia of malingering. ALJ Tielens's heavy emphasis of evidence suggesting that such circumstance might be in play may have colored his judgment, and caused him unwittingly to take shortcuts toward a reflexive conclusion. Constitutional guarantees of due process and equal protection of law, however, require that unappealing, even manipulative claimants receive the same fair and principled consideration as those with valid claims who proceed in complete good faith. Because such consideration was not afforded to Traufler, the Commissioner's decision must be reversed and remanded for further consideration.

Reversal should not be interpreted as an indication that the court thinks Traufler should or should not prevail on remand. The only message the court intends to convey is that application of correct principles of law and production of substantial evidence are a more reliable and effective means of winnowing chaff from wheat than *ad hoc* shortcuts. When correct principles of law are applied, and substantial evidence is produced, ALJ Tielens or a successor administrative law judge may or may not reach the same conclusions as were reviewed here.

1. The Commissioner's decision should be **REVERSED** and the case **REMANDED** pursuant to 42 U.S.C. § 405(g), sentence four, for further proceedings including reexamination of (a) whether Traufler's asthma, obesity, and cognitive deficits are severe impairments under this circuit's *de minimis* standard, and (b) the extent to which Traufler's occupational base is eroded by nonexertional impairments.

2. To guard against necessity for further actions seeking judicial review, the court also should request that, on remand, the Commissioner also reflect on *all* errors asserted in this action as set forth herein at Section IV.

## VIII.  Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the   30   day of   November   2012.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge